IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

RASHID BOUNDS,

              Defendants.

Case No. 17 C 8785

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendant Rashid Bounds moves to vacate, set aside, or otherwise correct his sentence pursuant to 28 U.S.C. § 2255. (Civ. Dkt. No. 8). For the reasons stated herein, the Court denies the motion. The Court finds that a certificate of appealability is not warranted.

## I. BACKGROUND

Defendant Rashid Bounds challenges his 2013 criminal conviction for conspiracy to possess with the intent to distribute controlled substances. *United States v. Penson et al.*, 12-CR-00589 (N.D. Ill. 2012) (Castillo, J.) For ease of reference, citations to "Dkt. No." correspond to the docket for Bounds' criminal trial and citations to "Civ. Dkt. No." refer to the docket for the instant action.

In February 2011, Bounds was indicted on a single count of conspiring to possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1), 846. (Indict. at 1, Dkt. No. 4.) The charged conduct covered the period from November 2007 to March 2008 and involved Bounds and three named co-defendants. (*Id.*) Several additional co-conspirators were charged in separate indictments. (Resp. at 1, Civ. Dkt. No. 11.) In May 2013 a jury convicted Bounds on the single count in the indictment. (Jury Verdict at 1, Dkt. No. 176.) In December 2013, Judge Rubén Castillo sentenced Bounds to 216 months incarceration. (J. at 1, Dkt. No. 225.)

### A. Pre-Trial

The single count in Bounds' indictment carried a ten-year statutory mandatory minimum sentence. 21 U.S.C. §§ 841(b)(1)(A), 846. Under the 2013 version of the Controlled Substances Act, Bounds' statutory mandatory minimum could be increased to twenty years if his conviction occurred "after a prior conviction for a felony drug offense [became] final." *Id.* § 841(b)(1)(A) (2012) (amended 2018). The statute defined "felony drug offense" as an "offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs,

marihuana, anabolic steroids, or depressant or stimulant substances." *Id.* § 802 (2012) (amended 2014). In order to subject Bounds to the increased mandatory minimum, before trial or the entry of a plea agreement the Government was required to file an "851 Notice," which is a document "stating in writing the previous convictions to be relied upon." *Id.* § 851(a)(1).

In January 2013, the Government filed an 851 Notice as to Bounds. (851 Notice, Dkt. No. 93.) The notice listed three prior convictions: (1) a 2005 conviction for possession of a controlled substance in violation of 720 ILCS 570/402(c); (2) a 2006 conviction for the manufacture or delivery of a controlled substance in violation of 720 ILCS 570/407(b)(]1); and (3) a 2006 conviction for the manufacture or delivery of a controlled substance in violation of 720 ILCS 570/401(d). (*Id.* at 1–2.)

In April 2013, Bounds filed a response to the 851 Notice. (851 Resp., Dkt. No. 141.) The 851 response argued, *inter alia,* that the underlying convictions listed in the notice were not qualifying convictions under Section 851. (*Id.* at 2.) Bounds also alleged that the Section 851 procedures "are unconstitutional in that such prior convictions are elements of the offense which must be identified in an indictment, must be presented to the jury, and must be proved to the jury beyond a reasonable doubt." (*Id.*)

- 3 -

Because the 851 Notice only applies if Bounds is sentenced, the trial court did not immediately rule on the objections.

Before proceeding to trial, the Government offered Bounds a plea agreement. (Draft Plea, Resp., Ex. B., Civ. Dkt. No. 11-2.) Under the terms of the proposed plea agreement, Bounds would plead guilty to the single count of conspiracy to possess with intent to distribute one kilogram or more of a mixture and substance containing heroin in violation of 21 U.S.C. §§ 841(a)(1), 846. (*Id.* at 2.) The factual basis for the draft plea agreement estimated that Bounds "distributed or assisted in distributing . . . approximately 7 kilograms" of heroin. (*Id.* at 6.)

The draft plea agreement set forth a proposed Sentencing Guidelines calculation, based on the November 2012 Guidelines Manual. (*Id.* at 7.) The Government anticipated a total offense level of 36, which included a two-point reduction for acceptance of responsibility and a one-point reduction for timely entry of plea agreement. (*Id.* ¶¶ 9(b), 9(d).) The Government further estimated a criminal history category of III, resulting in an anticipated Sentencing Guidelines range of 235 to 293 months. (*Id.* ¶¶ 9(c)-(d).)

Finally, under the terms of the draft plea, the Government agreed to dismiss the previously filed 851 Notice. (*Id.* ¶ 13.)

Bounds did not accept this plea agreement and instead proceeded to trial in May 2013.

## B. The Government's Fingerprint Expert

Bounds' attorney filed various pre-trial motions, including a motion to bar testimony from the Government's fingerprint expert, Joseph Ambrozich. (Expert Mot. at 4–5, Dkt. No. 136.) The motion argued that "the opinion anticipated to be rendered at trial is not adequately set forth in the report to meet the requirements of Rule 702 and Rule 16(g)." (*Id.* at 5–6.) Specifically, Ambrozich failed to "indicate the number of points that matched between the known print and the subject print that formed the basis for his opinion that there was a match." (*Id.* at 7–8.) Bounds argued that because of this omission, the Ambrozich report "does not state the reason for his conclusion that there is a [fingerprint] match." (*Id.* at 8.) The trial court denied Bounds' motion, concluding the expert disclosure was "sufficient under Rule 16" and that the "expert will be subject to cross-examination by capable defense counsel." (5/8/13 Tr. at 4, Dkt. No. 269.)

## C. Government's Case in Chief

In May 2013, Bounds proceeded to a jury trial alongside co-conspirator Christopher Saunders. The two other co-conspirators named in Bounds' indictment, Joenathan Penson and Terrence Penson,

entered plea agreements. (T. Penson Plea, Dkt. No. 151; J. Penson Plea, Dkt. No. 157.)

In its case in chief, the Government called as witnesses Joenathan Penson (5/14/13 Tr. at 264-95, Dkt. No. 255; 5/15/13 Tr. at 301-421, Dkt. No. 256), Mokece Lee (5/14/13 Tr. at 74-247) and James Brown (5/15/13 Tr. at 422-84). Penson, Lee, and Brown each admitted to participating in a conspiracy to distribute heroin with Bounds. (*See, e.g.,* 5/14/13 Tr. at 123-24, 283; 5/15/13 Tr. at 433-34.) The witnesses also identified an apartment building known as the "Up Top" which was used to mix raw heroin with Dormin, a sleeping pill, and then package the end product for sale. (*See, e.g.,* 5/14/13 Tr. at 97-98, 293; 5/15/13 Tr. at 436-38.) The co-conspirators also provided testimony regarding the specific Dormin to heroin ratio in the mixtures created at the "Up Top"—13 grams of Dormin with 5 grams of heroin. (*See, e.g.,* 5/14/13 Tr. at 98, 274; 5/15/13 Tr. at 430.)

In addition to the co-conspirator testimony, the Government introduced surveillance photos showing Bounds entering and exiting the "Up Top" during the relevant period. (*See, e.g.,* 5/14/13 Tr. at 146-48.) The Government also introduced byproducts of heroin mixing recovered from the trash cans outside the "Up Top," including empty Dormin bottles, red plastic capsules, aluminum foil containers, and plastic baggies. (*See, e.g.,* 5/13/13 Tr. at

12-13, Dkt. No. 254.) Finally, the Government offered forensic testimony that the trash from outside the "Up Top" tested positive for "trace amounts of heroin and diphenhydramine" (the active ingredient in Dormin) and included latent fingerprints that matched Bounds. (*See, e.g.,* 5/15/13 Tr. at 503-04; 5/16/13 Tr. at 574-75, Dkt. No. 257.)

### D. The Jury Verdict

Evidence concluded on May 16, 2013 and the jury began deliberations the next day. (5/16/13 Minute Entry, Dkt. No. 170.) The parties previously agreed to a special verdict form. The form instructed jurors that if Bounds was found "guilty of the charged offense . . . then you must find the type and amount of controlled substances involved in the offense." (Proposed Verdict Form at 3, Dkt. No. 167.) The special verdict form provided three options: (1) 1000 grams or more of mixtures containing heroin; (2) at least 100 grams of mixtures containing heroin but less than 1000 grams; and (3) a detectable amount but less than 100 grams of mixtures containing heroin. (*Id.* at 4.) Jurors were instructed to "select one line only." (*Id.*)

The jury returned a guilty verdict the same day it began deliberations, May 17, 2013. (Jury Verdict at 1.) On the special verdict form the jurors selected the second option, finding Bounds' offense involved at least 100 grams but less than 1000 grams of

mixture containing heroin. (Pre-Sentence Rep. ("PSR") at 29, Dkt. No. 205.)

### E.  Post-Trial

The jury's special verdict altered the statutory mandatory minimum applicable to Bounds. The Government indicted Bounds for a conspiracy involving more than one kilogram of heroin, under Section 841(b)(1)(A). (Indict. at 1). This charge carried a ten-year mandatory minimum. 21 U.S.C. § 841(b)(1)(A). The jury's special verdict, however, convicted Bounds for an offense with a controlled substance weight of less than one kilogram but more than 100 grams. (PSR at 29.) This conduct is covered by Section 841(b)(1)(B), which carried a mandatory minimum of five years, instead of ten. 21 U.S.C. § 841(b)(1)(B). Under Section 841(b)(1)(B), if the trial court deemed the Government's previously-filed 851 Notice valid, Bounds' mandatory minimum would increase to ten years. *Id.*

On June 26, 2013, Bounds filed a joint motion for a new trial (New Trial Mot., Dkt. No. 182.) The motion for a new trial renewed Bounds' prior challenges to the fingerprint expert and the 851 Notice. (*Id.* at 4, 6-11.) Bounds also contended that, under the Supreme Court's recent decision in *Alleyne v. United States,* the parties must submit to the jury any fact affecting a defendant's mandatory minimum sentence. (*Id.* (citing *Alleyne v. United States,*

570 U.S. 99, 103 (2013).) Bounds argued that because the Government did not submit his prior convictions to the jury, the pre-trial 851 Notice was ineffective. (*Id.* at 1.)

One month later, on July 25, 2013, the trial court denied the motion for a new trial. The trial court concluded that Bounds and his co-defendant "were not unfairly prejudiced by an inadequate fingerprint expert disclosure." (Post-Trial Order at 1, Dkt. No. 196.) The trial court also stated that it would abide by the *Alleyne* decision and the statutory mandatory minimum of five years would apply. (*Id.*) The order made no reference to the Government's previously-filed 851 Notice. (*Id.*)

### F. Sentencing

On August 29, 2013 Probation filed Bounds' PSR and sentencing recommendation. (PSR; Sent'g Rec., Dkt. No. 206.) The PSR reported that Bounds was subject to a ten-year mandatory minimum sentence. (PSR at 19.) Probation acknowledged that the jury's special verdict found Bounds responsible for at least 100 grams but not more than 1000 grams of heroin, which carried a five-year mandatory minimum. (*Id.* at 29.) According to Probation, however, the Government's 851 Notice increased the mandatory minimum sentence to ten years. (*Id.*)

The PSR also calculated Bounds' sentencing guidelines range. Probation reported a base level offense of 36, concluding that the conspiracy involved at least 10 kilograms of heroin. (*Id.* at 7.)

The PSR also applied a three-point enhancement for Bounds' supervisory role in the heroin conspiracy, resulting in a total offense level of 39. (*Id.* at 8.) Based on Bounds' criminal history category of III, the PSR calculated a sentencing guidelines advisory range of 324 to 405 months. (*Id.* at 19.) Probation ultimately recommend a below guidelines sentence of 216 months incarceration. (Sent'g Rec. at 1.)

On September 25, 2013, Bounds filed a sentencing memorandum, challenging aspects of the PSR and offering his own sentencing recommendation. (Sent'g Mem., Dkt. No. 210.) In his sentencing memorandum, Bounds acknowledged that the Government is subject to a lower burden of proof at sentencing, and the trial court has the authority to consider evidence regarding drug weights at that lower standard of proof. (*Id.* at 5.) Even so, Bounds argued, the trial court should not consider a base level offense predicated on a drug weight higher than the jury's special verdict. (*Id.* at 1–2, 5–6.) Instead, Bounds argued for a base level offense of 26, based on a drug weight of at least 100 grams but less than 400 grams. (*Id.* at 6.) Bounds also disputed the three-point enhancement for his leadership role in the conspiracy and urged the court to adopt a total offense level of 26. (*Id.*)

The sentencing memo also objected to the PSR's application of a ten-year mandatory minimum. (*Id.* at 5.) Bounds renewed his prior

*Alleyne* argument and pointed out that the court already ruled that *Alleyne* limited the mandatory minimum to 5 years. (*Id.*) Bounds ultimately asked the court for a sentence at this mandatory minimum—60 months imprisonment. (*Id.* at 7.)

At sentencing, the trial court addressed Bounds' 851 Notice for the first time. The trial court determined the 851 Notice was valid and as a result Bounds was subject to the enhanced mandatory minimum sentence of 10 years. (12/17/13 Tr. at 35–36, Dkt. No. 258.) In calculating the applicable guidelines range, the trial court found by a preponderance of evidence that Bounds was involved in a conspiracy involving at least 3 kilograms but not more than 10 kilograms of heroin. (*Id.* at 24.) This conclusion resulted in a base level offense of 34. (*Id.* at 25.) The trial court also applied the three-point enhancement for Bounds' leadership role in the conspiracy, resulting in a total offense level of 37 and guidelines range of 262 to 327 months imprisonment. (*Id.* at 30, 40.) The trial court ultimately sentenced Bounds below the applicable guidelines range, following Probation's recommendation and sentencing Bounds to 216 months imprisonment. (*Id.* at 102.) Following amendments to the sentencing guidelines and pursuant to 18 U.S.C. § 3582, the trial court lowered Bounds sentence to 210 months in January 2017. (Reduct. Order, Dkt. No. 322.)

### G. Bounds' Appeal to the Seventh Circuit

After sentencing, Bounds filed a direct appeal, and the Seventh Circuit affirmed his conviction. *United States v. Saunders,* 826 F.3d 363 (7th Cir. 2016). On appeal, Bounds raised four arguments, three of which are relevant to the instant habeas action. The first argument challenged the admissibility of the Government's fingerprint expert, and the second and third challenged the trial court's drug weight findings at sentencing.

First, Bounds argued that "the [trial] court abused its discretion in admitting the Government's fingerprint expert testimony without requiring the Government to disclose the bases and reasons for the expert's opinions." *Id.* at 368. The Seventh Circuit agreed that the trial court erred in admitting the fingerprint testimony without requiring the Government to supplement its disclosure. *Id.* at 370. The Seventh Circuit concluded, however, that the error was harmless, because even "without the fingerprint testimony, there was plenty of strong evidence for the jury to determine the defendants' guilt, and the Government's case would not have been significantly less persuasive." *Id.*

Second, Bounds argued that at sentencing, the trial court should have based his sentence on the jury's drug weight verdict of more than 100 grams, but less than 1000 grams of heroin. *Id.* at

- 12 -

371–72. After review of the special verdict form, the Seventh Circuit concluded the "form cannot be properly read as a factual finding." *Id.* at 373. Instead, by selecting option 2 the "jury merely found that the Government had failed to carry its burden to prove beyond a reasonable doubt that more than 1,000 grams of heroin were involved." *Id.* Consequently, the Seventh Circuit held that the trial court was permitted to consider and find a higher drug quantity by a preponderance of evidence, which is the lower burden of proof used at sentencing. *Id.*

Third, Bounds argued that the trial court erred by "by failing to articulate a reliable methodology" for its drug quantity finding. *Id.* at 372. The Seventh Circuit disagreed, finding the record clearly showed what evidence the trial court used in its final drug weight calculation. *Id.* at 374. Indeed, the trial court's final calculation was based on the testimony of co-conspirators who explained the Dormin to heroin ratio used by Bounds and the number of Dormin bottles recovered from the trash. *Id.* at 374–75.

The Seventh Circuit ultimately affirmed Bounds' convictions. *Id.* at 375. Bounds filed this petition for relief pursuant to 28 U.S.C. § 2255 on February 4, 2020. (Mot., Civ. Dkt. 8.)

## II.  <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2255, a prisoner in federal custody may petition the court where he was sentenced to issue an order to vacate, set aside, or correct his sentence. Section 2255 relief "is reserved for extraordinary situations." *Hays v. United States,* 397 F.3d 564, 566 (7th Cir. 2005) (citations omitted). This is because "relief under § 2255 . . . asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). A petitioner must show that "the district court sentenced him in violation of the Constitution or laws of the United States" to receive relief under § 2255. *Hays,* 397 F.3d at 566–67 (quoting *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996)).

### III.  ANALYSIS

Bounds argues he is entitled to be resentenced based on the ineffective assistance of his attorney. A petitioner that argues he or she is entitled to relief under § 2255 as a result of ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the "highly deferential" first prong, a petitioner must overcome

- 14 -

a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Second, the petitioner must show that counsel's deficient performance was so prejudicial to their defense that they were deprived of their right to a fair trial. *Id.* at 687, 691–92. To satisfy *Strickland's* second prong, the petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When reviewing allegations of ineffective assistance of counsel, the Court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 670.

Bounds argues his representation was constitutionally deficient with respect to four topics: (1) the drug weight used to determine his sentence; (2) the fingerprint evidence introduced at trial; (3) the ratio used when mixing heroin and Dormin; and (4) the 851 Notice. The Court addresses each below.

### A. Drug Weight

Bounds first argues that his counsel did not adequately contest the drug weight the trial court used to determine his

- 15 -

sentence, resulting in a longer period of incarceration. Bounds contends that his attorney should have contested the trial court's conclusion that the conspiracy involved more than three but less than ten kilograms of heroin, based on either double jeopardy or the holding of *Alleyne v. United States*. Finally, he argues, had counsel properly advised him that at sentencing the trial court could make findings of fact beyond the jury's drug weight verdict he would have accepted a plea rather than go to trial. Each of these arguments fails the *Strickland* test.

### *1. Double Jeopardy*

The Double Jeopardy Clause of the Fifth Amendment protects against a second prosecution for the same offense after a defendant is convicted or acquitted. *Currier v. Virginia,* 138 S. Ct. 2144, 2150 (2018). According to Bounds, the jury based their verdict on "at least 100 grams of mixture containing heroin but less than 1000 grams" means that he was acquitted for the greater weight of "1000 grams or more of mixtures containing heroin." (Mem. at 2-4, Civ. Dkt. No. 8.) It follows, Bounds argues, that the sentencing court violated the Double Jeopardy Clause by sentencing him based on acquitted conduct, i.e., a higher drug weight. Bounds contends that his attorney's failure to raise a double jeopardy claim at sentencing was constitutionally deficient. The Court disagrees.

The Seventh Circuit explicitly rejected the notion that Bounds was acquitted of the higher drug weight when it denied his direct appeal. *Saunders,* 826 F.3d at 373. Instead, the Seventh Circuit found that the special verdict form only indicated which drug weight the jury found was proven beyond a reasonable doubt. *Id.* Absent acquitted conduct, there are no concerns about double jeopardy.

Second, even if he was acquitted of the higher drug weight, Bounds' double jeopardy argument is foreclosed by the Supreme Court's holding in *United States v. Watts,* 519 U.S. 148, 156 (1997). The *Watts* defendant was convicted of possessing cocaine with an intent to distribute and acquitted of using a firearm in relation to a drug offense. *Id.* at 149–50. At sentencing, the trial court "found by a preponderance of the evidence that [the defendant] had possessed the guns in connection with the drug offense" and applied the relevant sentencing enhancement. *Id.* at 150. The Supreme Court affirmed the judgment on the grounds that "'an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.'" *Id.* at 156 (quoting *Dowling v. United States,* 493 U.S. 342, 349 (1990)).

Bounds' case presents a similar set of facts. Bounds' jury considered but did not find him guilty of a conspiracy involving

more than one kilogram of heroin. (PSR at 29.) At sentencing, the trial court considered the trial evidence regarding drug weight, this time at the lower preponderance of evidence standard. (12/17/13 Tr. at 23-24.) Based on the trial court's review of the record, it concluded Bounds was responsible for 3.69 kilograms of heroin. (*Id.*) The trial court then used this higher drug weight to determine Bounds' sentencing guidelines base level offense. (*Id.* at 25.)

Because *Watts* allows a sentencing court to consider even acquitted conduct at a lower standard of proof, the trial court did not violate Bounds' right against Double Jeopardy by considering evidence of a drug weight great than one kilogram. *Watts,* 519 U.S. at 157. Counsel's failure to raise a non-meritorious double jeopardy argument is therefore not objectively unreasonable, nor could it cause Bounds prejudice.

### 2. *Alleyne v. United States*

At the time of Bounds' trial, the Supreme Court had already held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000). Less than a month after Bounds' conviction, the Supreme Court extended *Apprendi* and held that "any fact that increases the mandatory minimum is an 'element' that must be

submitted to the jury." *Alleyne,* 570 U.S. at 103. Taken together, *Apprendi* and *Alleyne* require that the facts that establish the statutory minimums and maximums must be found by the jury. The sentencing court, however, retains the discretion to enter any judgment within that range.

Bounds argues that his counsel erred by failing to raise an *Alleyne* challenge to the drug weight determination at sentencing. This argument fails for two reasons. First, Bounds' counsel properly raised *Alleyne* where the holding impacted Bounds' sentence—the applicable minimum and maximum sentences. (Sent'g Mem. at 5.) Indeed, the court acknowledged the impact of *Alleyne* pre-sentencing, ordering that Bounds' jury verdict was subject to a five-year mandatory minimum. (Post-Trial Order at 1.)

Second, *Alleyne* says nothing of what information the court may consider when calculating the sentencing guidelines. Here, because the jury's special verdict convicted Bounds for a conspiracy involving at least 100 grams, but not more than 1000 grams, the court was constrained by a statutory minimum sentence of 5 years and a statutory maximum sentence of 40 years. 21 U.S.C. § 841(b)(1)(b). And the court abided by *Alleyne*'s principles, ultimately sentencing Bounds 18 years imprisonment. (J. at 1.) While 18 years of imprisonment is greater than the applicable five-

year mandatory minimum, it is well below the statutory maximum of 40 years.

Counsel's failure to raise an inapposite *Alleyne* argument was not objectively unreasonable, nor did it cause Bounds prejudice.

### 3. Plea Agreement

Finally, Bounds suggests that, had his counsel explained that the court could conduct its own fact-finding related to drug weight, he would not have declined a plea bargain. This argument is without support in the record.

As the Government sets forth in its brief, Bounds was offered a single plea agreement. (*See generally* Draft Plea.) The offered plea agreement was based on an admitted drug weight of one kilogram or more of heroin. (*Id.* at 1.) Such a plea carried with it a ten-year mandatory minimum and a maximum sentence of life in prison. (*Id.* at 6.) The plea also makes clear that the Government intended to prove that Bounds was responsible for at least 3 kilograms but less than 10 kilograms of heroin. (*Id.* at 7.) Finally, the draft plea calculates an anticipated guidelines range of 235 to 293 months imprisonment. (*Id.* at 10.)

*Strickland*'s prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 695. Bound does not meet this standard.

Bounds provides no evidence that the Government offered another plea agreement based on lower drug weights. As a result, the only plea available to Bounds would not have placed him in a better situation than he was in post-sentencing. Thus, even if counsel did not adequately inform Bounds that the sentencing judge could make their own findings of fact on drug weight, there is no evidence that entering into a plea agreement would have resulted in anything more favorable than the below guidelines sentence Bounds received. Consequently, Bounds fails *Strickland*'s prejudice prong because he cannot show that but for the complained of conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

For the foregoing reasons Bounds' first ineffective assistance of counsel claim must fail.

## B. Daubert Challenge

Bounds next argues that counsel should have challenged the methodology used by the government's fingerprint expert. According to Bounds, "[l]imiting Bounds' exposure to . . . the 143 Dormin bottles was a paramount issue to be defended and counsel simply failed to do so[.]" (Mem. at 4-5.) This argument fails both prongs of the *Strickland* analysis.

First, the fingerprint expert did not go unchallenged. In the pre-trial motion, Bounds' counsel challenged the fingerprint

expert on the grounds that the expert report failed to state the reasons for his conclusion and was therefore insufficient under Rule 703 and Rule 16(g). (Expert Mot. at 4–5.) The motion was denied. (5/8/13 Tr. at 4.) After the trial, Bounds' counsel renewed the objection to the fingerprint expert. (New Trial Mot. at 6–11.) This motion was also denied. (Post-Trial Order at 1.) Counsel also challenged the expert testimony on direct appeal to the Seventh Circuit. *Saunders,* 826 F.3d at 368–71. On appeal the Seventh Circuit agreed that the trial court erred in admitting the expert testimony, but ultimately found the error harmless. *Id.*

*Strickland,* "builds in an element of deference to counsel's choices in conducting the litigation." *Holman v. Gilmore,* 126 F.3d 876, 881 (7th Cir. 1997). Bounds fails to offer a single reason why the Court should not defer to his counsel's strategic decisions on how to attack the Government's fingerprint expert. This is particularly true where the Seventh Circuit ruled in counsel's favor on this point. Indeed, as Bounds concedes, his counsel was "acting within professional norms" when he did not also raise a challenge to the methodology used by the Government's fingerprint expert. (Mem. at 4.) Because the standard for ineffective assistance is acting outside the professional norms, and we find no evidence of such conduct here, this argument fails the first *Strickland* prong. *Strickland,* 466 U.S. at 688.

This argument also fails *Strickland*'s prejudice prong. At trial, the jury heard testimony from three of Bounds' conspirators regarding his involvement in the heroin conspiracy. (*See, e.g.,* 5/14/13 Tr. at 123-24, 283; 5/15/13 Tr. at 433-34.) The co-conspirators also identified the "Up Top" as the location used to mix raw heroin for sale. (*See, e.g.,* 5/14/13 Tr. at 97-98, 293; 5/15/13 Tr. at 436-38.) The forensic testing of trash from outside the "Up Top" corroborated the co-conspirators' testimony because it "found trace amounts of heroin and diphenhydramine," the active ingredient in Dormin. (*See, e.g.,* 5/15/13 Tr. at 503-04.) Finally, the jury was shown surveillance photos depicting Bounds entering and exiting the "Up Top" during the relevant time period. (*See, e.g.,* 5/14/13 Tr. at 146-148.) The fingerprint analysis was thus just a small part of the Government's case against Bounds.

Given "the overwhelming evidence against him and from our review of the record," this Court concludes that Bounds has failed to demonstrate the outcome of his trial may have been different if counsel successfully challenged the Government's fingerprint expert. *United States v. Birk,* 453 F.3d 893, 899 (7th Cir. 2006); *Cooper v. United States,* 378 F.3d 638, 642 (7th Cir. 2004). Consequently, Bounds has failed to establish that he was prejudiced by counsel's failure to challenge the methodology used by the

Government's fingerprint expert. For these reasons Bounds' second ineffective assistance of counsel claim must fail.

### C. Expert Testimony.

Bounds next argues that his counsel was deficient because he failed to offer expert testimony to rebut the trial court's drug weight calculation at sentencing. At trial, the Government alleged that Bounds and his co-conspirators mixed heroin and Dormin at a ratio of 13 grams of Dormin with 5 grams of heroin. (*See, e.g.,* 5/14/13 Tr. at 98, 274; 5/15/13 Tr. at 430.) The trial court relied on this mixture ratio to calculate the applicable drug weight at sentencing. (12/17/13 Tr. at 17–25.) Bounds argues that the Government's evidence incorrectly presented as fact that there is a standard or trademark mixture of Dormin and heroin. According to Bounds, there is no such standard mixture, a fact that an expert could have testified to. Because of counsel's failure, Bounds alleges, at sentencing the court relied on this unrebutted mixture testimony, resulting in a lengthier sentence. (*Id.*) This argument in unavailing.

To start, Bounds misstates the Government's theory. The Government's so-called "trademark theory" did not argue that there is a standard mixture of heroin and Dormin. Instead, the Government presented evidence that the ratio of Dormin to heroin in the narcotics Bounds sold was specific to him and his co-conspirators.

- 24 -

(*See, e.g.,* 5/14/13 Tr. at 98, 104-05.) Indeed, the Government's mixture recipe was based on testimony from Bounds' co-conspirators about their practices, (*See, e.g., id.* at 98, 274; 5/15/13 Tr. at 430.)

In order to show that counsel's failure to obtain an expert to rebut these fact witnesses constituted ineffective assistance, the defendant first must demonstrate "that the evidence was available and that it would have been helpful to [Bounds'] defense." *Ruhl v. Hardy,* 743 F.3d 1083, 1096-97 (7th Cir. 2014). Bounds has made no such showing. First, Bounds has failed to articulate what type of expert could have been called. Bounds also fails to explain how any expert could have helpfully undermined the firsthand accounts of his three co-conspirators on their actual mixing practices. Given the uncertainty of what, if any, value Bounds' proposed witness would have added, Bounds has "not demonstrated that his counsel's decision not to call [an expert] was unreasonable under prevailing professional norms." *Valenzuela v. United States,* 261 F.3d 694, 699-700 (7th Cir. 2001). For this reason, Bounds' third ineffective assistance of counsel claim must fail.

### D.  The 851 Notice

Finally, Bounds argues that his attorney erred by failing to challenge the convictions in his 851 Notice. This argument also fails.

Bounds' mandatory minimum could be doubled if his conviction occurred "after a prior conviction for a felony drug offense has become final." 21 U.S.C. § 841(b)(1)(B) (2012) (amended 2018). Pre-trial, Bounds' attorney filed a response to the 851 Notice, arguing that the "noticed convictions are [not a] proper basis for seeking an enhanced sentence under Section 851." (851 Resp. at 2.) Bounds now argues his counsel should have also challenged this portion of the Controlled Substances Act as unconstitutionally vague for failing to define "felony drug offense."

The statute, however, does provide a definition for "felony drug offense." A "felony drug offense" is any "offense that is punishable by imprisonment for more than one year under any law of the United States or of a state or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances. 21 U.S.C. § 802 (2012) (amended 2014). Given the statute's clear definition of "felony drug offense," counsel's failure to challenge the 851 enhancement as unconstitutionally vague did not fall "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688.

Bounds also argues, citing nonrelevant case law, that his prior convictions did not quality as a "felony drug offense." (Mem. at 6-7 (citing *United States v. Bradley,* 381 F.3d 641, 647 n.5 (7th Cir. 2004) and *Carachuri-Rosendo v. Holder,* 560 U.S. 563, 566-67 (2010)).) For example, *Bradley* interpreted the definition of "drug trafficking crime" as used in 18 U.S.C. § 924(c). 381 F.3d at 646. And the *Carachuri-Rosendoco* court examined the definition of "aggravated felony" as used in the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* 560 U.S. 563, at 566.

Bounds' prior convictions each fit within the proper definition of "felony drug offense" as defined by Section 802 to be a drug offense punishable by one year or more of imprisonment. 21 U.S.C. § 802 (2012) (amended 2014). In 2005, Bounds was convicted of possession of a controlled substance a Class 4 felony punishable by a term of imprisonment "not less than 1 year and not more than 3 years." 720 ILCS 570/402(c) (2005); 730 ILCS 5/5-8-1(a)(7) (2005). In 2006, Bounds was convicted for the manufacture or delivery of a controlled substance, a Class X felony, punishable by "not less than 6 years and not more than 30 years." 720 ILCS 570/407(b)(1) (2006); 730 ILCS 5/5-8-1(a)(3) (2006). Also in 2006, Bounds was convicted of the manufacture or delivery of a controlled substance, a Class 2 felony, punishable by "not less than 3 years and not more than 7 years" imprisonment. 720 ILCS 570/401(d)

(2006); 720 ILCS 570/407(b)(1) (2006). Because these prior convictions fit within the plain definition for "prior drug felony" under Section 802, counsel's failure to challenge the convictions was not unreasonable nor was Bounds prejudiced. Bounds' fourth ineffective assistance of counsel claim thus fails.

### E. Certificate of Appealability

Finally, the Court must decide whether to grant Bounds a certificate of appealability. A certificate of appealability is warranted when a petitioner has "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), or when "jurists of reason would find it debatable whether the petition states a valid claim." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Because the Court finds that all of Bounds' claims are meritless, the Court declines to grant him a certificate of appealability.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, Bounds' § 2255 petition is denied, and the Court declines to grant him a certificate of appealability.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 3/2/2021

- 28 -